

FILED

JUL 2 0 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

ENTERED

JUL 2 3 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CYTODYN OF NEW MEXICO, INC.,<br><br>      Debtor. | USBC New Mexico<br>Case No. 07-11008 - s11<br><br>Adv. No. 07-01325-TD<br><br>Chapter 11 |
| MAYA, LLC, a Nevada Limited Liability Company,<br><br>      Plaintiff<br><br>      v.<br><br>CYTODYN OF NEW MEXICO, INC., a corporation; CYTODYN, INC., a corporation; ALLEN D. ALLEN; CORINNE E. ALLEN; AMERIMMUNE PHARMACEUTICALS, INC.; AMERIMMUNE, INC.; and DOES 1 through 50, inclusive,<br><br>      Defendants | MEMORANDUM OF DECISION<br><br>DATE:    July 11, 2007<br>TIME:    11:00 a.m.<br>PLACE:  Courtroom 1345, 13th Floor<br>             255 E. Temple St.<br>             Los Angeles, CA |

**INTRODUCTION**

This lawsuit is present in this court on Allen D. Allen's (Allen or defendant) request for removal from the Los Angeles Superior Court. This decision deals with two motions. First, Maya, LLC (Maya or plaintiff), moves to remand the lawsuit back to the Los Angeles Superior Court, where Maya originally filed its complaint on September 30, 2005. In the second motion, Allen moves to transfer this adversary to the New Mexico bankruptcy court, where Cytodyn of New Mexico, Inc. (Cytodyn or Debtor), another defendant, filed for chapter 11 bankruptcy on April 27, 2007.

Upon consideration of the evidence and the briefs before me, the following are my findings of fact and conclusions of law. I conclude that Maya's motion to remand should be granted, and Allen's motion to transfer should be denied.

Maya's pending complaint is based on allegations of misrepresentation/fraud, violation of securities laws, interference with contracts/economic interests, and breach of contract. Maya asserts the following as a result of its investigation and discovery efforts, though no factual issues have been tried or decided by the superior court with respect to Maya's complaint.

In the 1990's, Allen obtained patents for a class of antibodies that supposedly could be used to treat HIV. He called the drug "Cytolin" and incorporated a business, Cytodyn, to market its research and development to investors. Cytodyn had three employees: Allen himself, Allen's daughter, Corinne D. Allen, and a third individual who is not a party to the present litigation.

Allen's new corporation licensed the rights to the drug to a California corporation which in turn licensed them to Amerimmune Pharmaceuticals, Inc. ("Amerimmune"), another party to the current proceeding. Amerimmune, Cytodyn, and

2

1  Allen then pitched their drug to investors. Rex Lewis ("Lewis"), whose investment
2  company is Maya, was one of those solicited. In the course of persuading Maya to
3  invest in Cytolin, Maya alleges, Allen told a myriad of lies, including among others the
4  following: that he was a doctor with a PhD, when, Maya asserts, he had never
5  graduated from college; that the drug had been legally tested on 300 patients, when,
6  Maya asserts, the drug that was tested had not been produced for use in humans and
7  had been tested without FDA approval;[1] that the test showed the drug had been
8  effective, and that there were no side effects, when, Maya asserts, there was no
9  scientifically based evaluation of the drug.

10  Maya invested over $2 million in Amerimmune. However, the drug went
11  nowhere. Amerimmune went out of business. Lewis attempted to save his investment
12  by becoming President and CEO of Amerimmune, but this was to no avail.

13  In February 2003, Allen caused Cytodyn to sue both Amerimmune and Lewis
14  as an individual, in his capacity as an Amerimmune board member. This suit was filed
15  in the Los Angeles Superior Court. Maya alleges that Allen's purpose in filing it was to
16  intentionally expedite Amerimmune's failure, clearing the way for new victims of Allen's
17  alleged scheme. The state court granted summary judgment against Cytodyn in
18  November 2004. The state court also awarded attorneys' fees to Maya based upon a
19  finding of bad faith filing on the part of Cytodyn.

20  In the meantime, Lewis had filed a cross-complaint to Allen's complaint. The
21  parties subsequently signed a settlement agreement to the effect that Lewis would
22  dismiss his cross-complaint and re-file his claims in Maya's name. In the settlement,
23  the parties agreed that Maya's new action would be filed in the Los Angeles Superior

24

25  [1] Indeed, Maya asserts, Allen was sued for malpractice after illegally injecting the
26  drug into a psychiatric patient.

3

Court, "where Allen D. Allen resides." They also agreed to "cooperate in good faith in an effort to obtain the earliest practicable trial date."

Maya's new fraud action was filed on September 30, 2005. Maya's claims included various common law fraud and securities fraud claims, as well as derivative claims asserted on behalf of Amerimmune.

Allen, however, did not cooperate in good faith to obtain an early trial date. The trial was initially set for February 5, 2007. Allen moved ex parte for a continuance. Allen's motion was granted, but the court warned that there would be no further continuances. A new trial date was set for May 7, 2007. As that date approached, Allen asked Maya to agree to another continuance, but Maya refused. On April 26, not much more than a week before the scheduled trial date, Cytodyn filed for bankruptcy in New Mexico. Allen removed Maya's action to this court the next day, pursuant to F.R.B.P. 9027(a).[2]

Although Cytodyn was incorporated in New Mexico, where it has filed for bankruptcy, Maya asserts that Cytodyn has few other connections with that state. Allen, president and C.E.O., with total voting control of the company, is a California citizen, San Francisco born. The other two Cytodyn employees lived in California at least during the time that the events giving rise to the Maya lawsuit took place. All Cytodyn board meetings were held in Los Angeles. Substantial promotional activities

---

[2] Rule 9027(a)(1) requires, among other things, that the notice be accompanied by a copy of "all process and proceedings." I note here that the removal notice filed with this court was deficient in that it was accompanied only by Maya's First Amended Complaint as filed in the superior court, but not by any other process or proceedings of the superior court.

4

with respect to Cytolin took place in Los Angeles. Various agreements relating to investment in the drug and its licensing were executed in Los Angeles. Allen allegedly made fraudulent statements to Maya in California. Indeed, it was Allen himself who, in the Los Angeles Superior Court,  initiated the suit against Amerimmune that led to the present Maya action.

Maya's complaint and the resulting litigation has been removed to this court. Allen seeks a transfer to New Mexico bankruptcy court; Maya seeks abstention and remand. I conclude that Allen's motion to transfer should be denied and Maya's motion to remand should be granted.

## ABSTENTION AND REMAND

### Abstention

Maya argues that the court should abstain from hearing the action, citing 28 U.S.C. § 1334(c)(1) and (2). Section 1334(c)(2) provides for mandatory abstention:

> "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

Section 1334(c)(1) provides for discretionary abstention:

> ". . . nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

11 U.S.C. § 305(a)(1) also confers a general power to abstain:

> "The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under title, at any time if the interests of creditors and the debtor would be better served by such dismissal or suspension."

However, abstention must be denied under all three of these statutes. With respect to section 1334(c), the Ninth Circuit has taken the position that this section

5

does not apply to removed proceedings, since a successful removal effectively

extinguishes the parallel proceeding in state court. Security Farms v. Int'l Bhd. Of

Teamsters, Chauffeurs, Warehousemen & Helpers, 124 F.3d 999, 1010 (9th Cir.

1997).

As for section 305, the Ninth Circuit BAP has held: "the test under section

305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor.

Nor is the test whether a balancing process favors dismissal. Rather, the test is

whether both the debtor and the creditors would be 'better served' by a dismissal."

Eastman v. Eastman (In re Eastman), 188 B.R. 612, 625 (9th Cir.BAP 1995). This

renders section 305(a) "an extraordinary remedy". Id. at 624. It is unlikely that

abstention would be in the interest of the Debtor in this case. Quite the contrary, it is in

the Debtor's interest for the motion to abstain and remand to be denied and for the

adversary to be transferred to the New Mexico bankruptcy court. Debtor might then

gain some logistical or tactical advantages in this litigation. Of course, Debtor's

advantages gained in the transfer would likely come at logistical or tactical prejudice to

Maya.

I do not believe that 28 U.S.C. § 1334(c) or 11 U.S.C. § 305 mandate or give

me the power to abstain in this case.

### Remand

The inapplicability of abstention does not prevent me from granting the motion

to remand under to 28 U.S.C. § 1452(b). I believe that remand is the proper course of

action on the two pending motions.

Under 28 U.S.C. § 1452(b), the court to which a "claim or cause of action is

removed may remand such claim or cause of action on any equitable ground."

Courts typically consider a range of factors in deciding whether to grant a

motion to remand. Fourteen such factors are:

**1.**  The effect or lack thereof on the efficient administration of the estate if a court recommends remand;

**2.**  The extent to which state law issues predominate over bankruptcy issues;

**3.**  The difficulty or unsettled nature of the applicable law;

**4.**  The presence of a related proceeding commenced in state court or other non-bankruptcy court;

**5.**  The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

**6.**  The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

**7.**  The substance rather than form of an asserted "core" proceeding;

**8.**  The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

**9.**  The burden on the bankruptcy court's docket;

**10.**  The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

**11.**  The existence of a right to a jury trial;

**12.**  The presence in the proceeding of nondebtor parties;

**13.**  Comity;

**14.**  The possibility of prejudice to other parties in the action.

See, e.g., Citigroup, Inc. v. Pacific Inv. Mgmt. Co. (In re Enron Corp.), 296 B.R. 505, 508 (C.D.Cal. 2003).

**The first factor** (efficient administration) weighs in favor of remand. On the one hand, Maya argues that the state court should be allowed to finish what it has begun in liquidating the state court claims, so that the chapter 11 case can proceed

7

efficiently. On the other hand, Allen asserts that the New Mexico bankruptcy court is better suited to determine the effects of the Maya claims on the administration of the chapter 11 case, given that the New Mexico court is in charge of the bankruptcy. I conclude that the fastest, most efficient, and most sensible way to resolve this litigation is not to send the parties, witnesses and evidence to a new court or state to finish this litigation, but to allow the state court to complete the trial and decision-making process.

Further, based on my evaluation of the Debtor's bankruptcy petition, schedules, and statement of financial affairs, as well as the declarations of witnesses, it is my conclusion that there is little evidence that the Debtor is likely to accomplish anything of substance in the chapter 11 New Mexico bankruptcy case. Allen asserts that substantial net operating losses (NOLs) exist that could be valuable and form the basis for a successful reorganization or liquidation of the Debtor.[3] However, Debtor's petition lists no income and no real property. Debtor's personal property assets (other than its asserted NOLs) apparently consist of stock in Amerimmune (a defunct company), two imaginary or speculative lawsuits, and a fireproof safe. Debtor's alleged creditors are all parties to the pending Maya action: Allen, Corinne Allen, Maya, and Amerimmune. The Debtor has identified no creditors holding either secured claims or unsecured nonpriority claims. Other than asserted NOLs, there

---

[3] While Allen asserts that Cytodyn has some $800,000 in valuable net operating losses that might form the basis for useful economic activity on behalf of Cytodyn, I conclude that under the circumstances presented on today's motions, attributing substantial value to Cytodyn NOLs would be highly speculative. Thus, I do not find a persuasive basis to attribute substantial value to Cytodyn's NOLs.

would appear to be little to do in the way of administration of the Debtor's estate, and so it is hard to imagine any non-speculative business purpose for the New Mexico bankruptcy. To the contrary, I conclude that the more likely motivation behind Cytodyn's decision to file its New Mexico chapter 11 petition was to frustrate Maya's litigation goals and reasonable expectations based on the parties' long-standing settlement agreement.

**The second factor** (predominance of state law issues) weighs strongly in favor of remand. The proceeding consists to an overwhelming degree of California state law issues.

**The third factor** (difficult/unsettled nature of the applicable law) weighs against remand. The proceeding does not involve difficult or unsettled areas of law.

**The fourth factor** (presence of a related proceeding commenced in state court) weighs in favor of remand. A related proceeding was *commenced* in state court. Allen argues that if the state proceeding was extinguished upon removal, as the Ninth Circuit ruled in Security Farms, then there is no related proceeding in state court. However, it seems silly to simply ignore the fact that a state action was "commenced", and was set to go to trial on May 7, before Allen removed. It is hard to believe that the Ninth Circuit would want me to ignore these relevant facts.

**The fifth factor** (other jurisdictional basis) might weigh either way, depending on how one analyzes the question of diversity. Maya argues that since it is a company incorporated in Nevada, and Amerimmune had its principal place of business in Nevada before becoming defunct, the common citizenship of these two parties defeats diversity. Allen, citing persuasive authority, argues that Amerimmune is not a Nevada citizen for diversity purposes, because it has been inactive in Nevada since it dissolved in 2001. Maya replies with different, equally persuasive authority, to the effect that for the purposes of diversity, Amerimmune is in fact a California citizen as

9

1    well as a plaintiff, since its last business activity occurred in California and since its

2    real interests are aligned with Maya. This classification would destroy complete

3    diversity, since Allen, a defendant, is also a California citizen. For the sake of

4    argument, we will assume that there is diversity jurisdiction; I believe it makes little

5    difference to the final analysis.

6    **The sixth factor** (relatedness to the main bankruptcy case) weighs in favor of

7    remand. Here, it is relevant to ask whether the adversary proceeding is "core" or "non-

8    core". Eastport Assoc. v. City of Los Angeles (In re Eastport Associates), 935 F.2d

9    1071, 1076 (9th Cir. 1991).

10    There are three ways to classify a proceeding as "core". First, cases "arising

11    under title 11" are considered core. 28 U.S.C. § 157(b)(1). Second, cases "arising in a

12    case under title 11" are considered core. Id. Third, 28 U.S.C. § 157(b)(2) provides a

13    non-exhaustive list of core proceedings.

14    The state law claims in this proceeding do not fall under any of the categories

15    listed in § 157(b)(2). The only possible argument that the claims are covered by the §

16    157(b)(2) list is that they fall under either § 157(b)(2)(A) ("matters concerning the

17    administration of the estate") or § 157(b)(2)(O) ("other proceedings affecting the

18    liquidation of the assets of the estate or the adjustment of the debtor-creditor or the

19    equity security holder relationship. . . ." However, the Ninth Circuit has ruled that these

20    "catch-all" provisions should be strictly construed. Piompo Corp. v. Castlerock Prop.

21    (In re Castlerock Prop.), 781 F.2d 159, 162 (9th Cir. 1986) (". . . we hold that state law

22    contract claims that do not specifically fall within the categories of core proceedings

23    enumerated in 28 U.S.C. § 157(b)(2)(B)-(N) are related proceedings under § 157(c)

24    even if they arguably fit within the literal wording of the two catch-all provisions,

25    sections 157(b)(2)(A) and (O).")

26    Nor do the state law claims merit "arising under" or "arising in" jurisdiction. They

1    arise under state law, and "arising in" jurisdiction has been held to refer to

2    administrative matters that arise in the course of a bankruptcy case. Eastport Assoc.,

3    935 F.2d at 1076; Sedlacheck v. Nat'l Bank (In re Kold Kist Brands, Inc.), 158 B.R.

4    175, 178 (C.D.Cal. 1993).

5        In general, a rule of thumb for whether a proceeding is "core" is whether the

6    proceeding could exist outside of bankruptcy. If so, it is "non-core". Eastport Assoc.,

7    935 F.2d at 1077. In this case, the litigation could (and does) exist outside of

8    bankruptcy, and indeed was going forward to trial in the superior court before Allen

9    removed it. I conclude the litigation here is "non-core".

10        Allen argues that alter ego claims such as those that Maya asserts belong

11    exclusively to the debtor in possession to assert. However such an argument seems

12    irrelevant to this particular dispute, since here, Maya's alter ego claims are being

13    asserted *against* the Debtor, not on the Debtor's behalf.

14        **The seventh factor** (the substance of an asserted "core" proceeding) is

15    irrelevant because this is not a core proceeding.

16        **The eighth factor** (feasibility of severing state law claims) probably weighs in

17    favor of remand. There would seem to be no valid reason why a judgment obtained in

18    state court could not be brought back to bankruptcy court for enforcement as part of

19    the chapter 11 case.

20        **The ninth factor** (burden on the bankruptcy court's docket), if anything, weighs

21    against remand. The burden on the Los Angeles Superior Court is probably greater

22    than the burden on the bankruptcy court, either here or in New Mexico.

23        **The tenth factor** (forum shopping) weighs strongly in favor of remand.

24    Particularly in light of the fact that the parties actually agreed in writing, in their

25    settlement agreement, to cooperate in good faith in an effort to file the lawsuit "in the

26    Los Angeles Superior Court . . . [in Los Angeles,] where Allen D. Allen resides," and to

obtain "the earliest practicable trial date." The proximity of the bankruptcy petition and the removal to the state court trial date, combined with Allen's repeated attempts to delay the state court's trial date, strongly suggest that Allen is not acting in good faith. I do not believe that Allen should be allowed any benefit from unilaterally changing his mind about the forum. Nor should he be allowed to foist his recent forum choice on Maya on the eve of a state court trial because it has occurred to him that transferring the action to New Mexico would make things more difficult for Maya and thereby increase Allen's chances of prevailing in the litigation.

**The eleventh factor** (right to a jury trial) weighs strongly in favor of remand. Maya has requested a jury trial, and it has a right to one in the state court. In bankruptcy court, Maya would need to obtain the consent of Allen and the other defendants in order to secure a jury trial.

**The twelfth factor** (presence of nondebtor parties) weighs in favor of remand. Nondebtor parties are present: Maya, Amerimmune, Allen, and Corinne Allen are all nondebtor parties.

**The thirteenth factor** (comity) appears to be neutral. Neither party offers a compelling argument that comity should weigh in one direction or another.

**The fourteenth factor** (possibility of prejudice) weighs in favor of remand. Maya would indeed be prejudiced by a transfer to New Mexico (which is the logical alternative to remand). All the events giving rise to Maya's state claims occurred in California. Two thirds of Maya's witnesses reside in California. Maya's documentary evidence is located in California. Maya's California counsel have done substantial work on the litigation in California. If the motion to remand were denied, Maya would be forced to pursue its claims with a new court in New Mexico, perhaps without the presence of many of its important witnesses. Maya would be prejudiced, both economically, and also with respect to its ability to effectively litigate its claims.

12

In the final analysis, I conclude that nine of the fourteen factors weigh in favor of remand. Only three factors weigh against, and not very strongly at that. The other two factors are neutral.

Factors one, two, ten, and eleven are the factors I consider to be the most important to my decision.

With respect to the first factor: if the courts cannot efficiently render justice then, practically speaking, they cannot render justice at all. Efficiency might be counterbalanced by concerns for justice and fairness, but in this case there are no such concerns. Transfer to New Mexico would be disproportionately inconvenient to Maya. I conclude that there is no convincing reason urged by Allen to support the idea that Allen cannot receive justice and fairness in the California state court. There are compelling reasons to remand this matter to the California state court.

The predominance of state law claims is also an important consideration. The central purpose of the bankruptcy courts is to hear bankruptcy cases; this is not a court of general jurisdiction. Here, though there is a bankruptcy case present, it does not appear to be a serious one. Given that there does not appear to be any special reason for me (or any bankruptcy court) to preside over this litigation, it makes little sense to continence the removal and to uproot Maya's claims from the Los Angeles Superior Court.

Equally important, to my thinking, is Maya's right to a jury trial. Maya has filed state law fraud claims in a state court, and Maya would seem, in fairness, to be entitled to have those claims heard by a jury, if it so chooses. Maya should not be denied this important right solely at Allen's election.

Worst of all, in my view, is that the bankruptcy, removal, and request to transfer all appear to be nothing more than a thinly veiled tactical maneuver by Allen: a highly bad faith attempt on Allen's part to inject delay, and an act of blatant forum shopping.

13

The bankruptcy petition is so patched together, and the reasons for transfer so thin, that it is hard for me to conclude that the transfer motion was anything other than an inappropriate manipulation of the court system.

After considering the conflicting interests of the parties, I conclude that, on balance, the relevant factors weigh most strongly in favor of remand and that the Maya action should be remanded to the California state court on the foregoing equitable grounds.

## TRANSFER

Given that I will grant remand, the motion for transfer is to some extent moot. However, on the merits, I do not believe that transfer is appropriate.

Pursuant to Fed. R. Bankr. P. 7087, "On motion and after a hearing, the court may transfer an adversary proceeding . . . pursuant to 28 U.S.C. § 1412 . . . ."

28 U.S.C. § 1412 states: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

Transfer motions must be considered on a case-by-case basis. See, TIG Ins. Co. v. Smolker (In re TIG Ins. Co.), 264 B.R. 661, 668 (Bkrtcy.C.D. Cal. 2001). Courts generally consider a range of factors in determining both "the interest of justice" and "the convenience of the parties." Relevant factors include:

**"Interest of Justice"**

1.    The location of the pending bankruptcy;

2.    Whether the transfer would promote the economic and efficient administration of the bankruptcy estate;

3.    Whether the interests of judicial economy would be served by the transfer;

4.    Whether the parties would be able to receive a fair trial in each of the

14

possible venues;

**5.** Whether either forum has an interest in having the controversy decided within its borders;

**6.** Whether the enforceability of any judgment obtained would be affected by the transfer;

**7.** Whether the plaintiff's original choice of forum should be disturbed.

**"Convenience of the Parties"**

**1.** Ease of access to the necessary proof;

**2.** The convenience of the witnesses and the parties and their relative physical and financial condition;

**3.** The availability of the subpoena power for unwilling witnesses;

**4.** The expense related to obtaining witnesses. Id.

**Factors Relevant to "The Interest of Justice"**

Transfer in this case would not serve the interest of justice.

**The first factor** (location of pending bankruptcy) weighs in favor of transfer. The bankruptcy is pending in New Mexico.

**The second factor** (economic and efficient administration of the bankruptcy estate) weighs against transfer. Maya argues that the costs of litigating in New Mexico will be higher for all parties: all parties will have to transfer witnesses and documents to New Mexico, retain New Mexico counsel, and start over from scratch after four years of pretrial litigation in the California court. Allen argues that it would be more efficient for a single court, the New Mexico bankruptcy court, to handle all matters, but I see no plausible reason why that would be true in this case. Not when the California state court has been so extensively involved over such a lengthy period. Not when witnesses, documents, and events are located conveniently to the original California state court forum, and while fewer or none are located conveniently to the New Mexico

bankruptcy court forum. From the standpoint of the New Mexico bankruptcy case, surely it is more economic and efficient for the suit against the Debtor to be brought to a speedier conclusion in the California state forum. The implications for the New Mexico bankruptcy case will then become clear.

Allen asserts three issues that "may" require the application of New Mexico law, but Maya has demonstrated in its briefing, at length and more persuasively, that the three issues Allen cites are in fact governed by California law.

**The third factor** (judicial economy) weighs in favor of transfer, based solely on the relatively meaningless fact, here, that if transferred, a single court would then be in charge of both the bankruptcy and the litigation.

**The fourth factor** (ability to receive a fair trial) weighs strongly against transfer. Maya seeks a jury trial. However, under 28 U.S.C. § 157(e), it could only obtain one from a bankruptcy judge "specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties". These requirements would make it more difficult for Maya to try its claims before a jury if tried before a bankruptcy court. In the bankruptcy court, the Debtor would be able to pocket veto Maya's request for a jury trial simply by refusing to consent to a jury trial before the bankruptcy judge.

**The fifth factor** (state's interest in having the controversy decided within its borders) weighs against transfer. Despite Allen's allegations that New Mexico law applies to the proceeding, in fact all of the claims are governed by California law. Further, the events giving rise to Maya's causes of action occurred in California, and none occurred in New Mexico. After due consideration and on balance, I believe that California's interest in trying this matter is stronger than New Mexico's. In addition, in light of the lengthy history of this litigation, it would appear that the California state court issues to be tried should take precedence over a bankruptcy case initiated,

16

1   perhaps as an afterthought, four years into the state court litigation.

2   **The sixth factor** (enforceability of any judgment) weighs against transfer. As

3   Maya asserts, a New Mexico judgment would have to be enforced in California, since

4   Allen is a California resident with no assets in New Mexico. Allen's statement that

5   "most of the Defendants are located" in New Mexico is misleading at best:

6   Amerimmune is a defunct company with no employees or officers. It is not really

7   "located" anywhere (though if it were, it would not be located in New Mexico). Cytodyn

8   was incorporated in New Mexico, but its board meetings took place in California, and

9   its three employees were all California residents. Allen, president and C.E.O. of

10  Cytodyn, is a long-time California citizen. Even if Corinne Allen resides in New Mexico,

11  "Most of the defendants" are *not* located in New Mexico.

12  **The seventh factor** (whether plaintiff's original choice of forum should be

13  disturbed) weighs against transfer. In fact, the Los Angeles forum is not Maya's

14  choice, but *Allen's*. It was Allen who filed the 2003 lawsuit in Los Angeles out of which

15  grew the present proceeding. Maya filed its claims in response  in the Los Angeles

16  state court forum in compliance with the parties' settlement agreement.

17  ## **Factors Relevant to "The Convenience of the Parties"**

18  I also conclude that transfer should be denied based on "the convenience of

19  the parties."

20  **The first factor** (ease of access to the necessary proof) weighs strongly

21  against transfer. Most material witnesses, contracts forming the basis of the action,

22  and documents produced are all located in California. No material or proof is located

23  in New Mexico.

24  **The second factor** (convenience of witnesses and parties) weighs strongly

25  against transfer. Again, 20 of Maya's 30 witnesses are located and reside in

26  California; none in New Mexico. Allen argues that he is willing to travel to New Mexico,

and that three of his witnesses are also willing to travel to testify. However, Maya

points out that these three witnesses are precisely the three that have an incentive to

obtain an inconvenient forum, despite the fact that they are California residents.

Further, they are witnesses that Allen controls. On balance, I am persuaded that Los

Angeles is more convenient than New Mexico under the circumstances of this dispute.

**The third factor** (availability of subpoena power) weighs strongly against

transfer. Subpoena power would be unavailable in New Mexico for the witnesses

identified by Maya: pursuant to Fed. R. Civ. P. 45(b)(2), "a subpoena may be served

at any place within the district of the court by which it is issued, or at any place without

the district that is within 100 miles of the place of the deposition, hearing, trial,

production, or inspection specified in the subpoena . . . ." Since Maya's witnesses are

in the Los Angeles area and none of the witnesses are in New Mexico or within 100

miles of the New Mexico bankruptcy court, this would mean that it is likely that far

fewer witnesses would testify in person if the trial were to take place in New Mexico.

**The fourth factor** (expense of obtaining witnesses) weighs against transfer.

Maya argues that even if its 20 California witnesses were willing to travel voluntarily to

New Mexico, Maya's expenses in paying the cost of travel and subsistence for a New

Mexico trial would increase significantly.

In the end, five of the seven factors relevant to "the interest of justice" weigh

against transfer. All of the factors relevant to "the convenience of the parties" weigh

against transfer.

With respect to "the interest of justice", plaintiff's original choice of forum is of

particular note. Maya/Allen chose Los Angeles for a reason: it was *the* logical location

for the trial. Maya itself is not a California corporation, but the interested parties lived

and the relevant events occurred in and around Los Angeles. It would have been

strange indeed to choose any other venue. Even Allen himself agreed: he signed a

18

settlement agreement that would ensure that venue. Nothing has changed since that settlement. The venue that the parties chose should stand. In fairness, Allen should not be allowed to subvert the settlement agreement.

With respect to "the convenience of the parties", all of the considerations weigh strongly against transfer, but subpoena power is particularly important. In order to effectively prosecute its case, Maya will need to be able to call a host of Los Angeles area witnesses. Without the ability to issue subpoenas, Maya could not easily call those witnesses to testify in person, and its ability to prosecute its case would be handicapped.

These concerns persuade me, on balance, that transfer to New Mexico is neither in the interest of justice nor for the convenience of the parties.

## ATTORNEYS' FEES

Maya bases its request for attorneys' fees on 28 U.S.C. § 1447(c) and on Fed. R. Bankr. P. 9011. Maya did not comply with Rule 9011, which requires a separate motion for sanctions, and so cannot collect under that rule.

28 U.S.C. § 1447(c) provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

Further, "A court may award attorney fees when removal is wrong as a matter of law." Ansley v. Ameriquest Mortgage Co., 340 F.3d 858 (9th Cir. 2003).

In this case, I do not believe that removal was wrong as a matter of law, and so I decline to award attorneys' fees.

1

**CONCLUSION**

2          Maya's motion to remand should be granted. Allen's motion to transfer should

3    be denied. Maya's request for an award of attorneys' fees should be denied.

4

5    SO ORDERED.

6

7
DATED: 7/20/07
8

9

10                                    THOMAS B. DONOVAN
                                 United States Bankruptcy Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF ENTRY OF JUDGMENT OR ORDER
AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

1.    You are hereby notified that a judgment or order entitled:

**MEMORANDUM OF DECISION**

was entered on _7-23-07_.

2.    I hereby certify that I mailed a true copy of the order or judgment to the persons

and entities listed below on _7-23-07_.

Debtor/Defendant
Cytodyn of New Mexico, Inc.
227 East Palace Ave.
Suite M
Santa Fe, NM 87501

Attorney for Debtor
William F. Davis, Esq.
William F. Davis & Associates, P.C.
6709 Academy NE, Suite A
P.O. Box 6
Albuquerque, NM 87103

Defendants
Allen D. Allen
4236 Longridge Ave. #302
Studio City, CA 91604

Corinne E. Allen
227 E. Palace Avenue
Suite M
Santa Fe, NM 87501

Amerimmune Pharmaceuticals, Inc.
2325-A Renaissance Drive
Las Vegas, NV 89119

Attorney for Defendants
Gregory M. Salvato
Parker Milliken Clark O'Hara &
Samuelian
555 S. Flower St. 30th Floor
Los Angeles, CA 90071

Plaintiff
Maya, LLC
c/o Bruce Lorman
1416 Sixth Street
Santa Monica, CA 90401

Attorney for Plaintiff
J. Scott Bovitz, Esq.
Bovitz & Spitzer
880 West First Street
Suite 502
Los Angeles, CA 90012

U.S. Trustee
Office of the U. S. Trustee
Ernst & Young Plaza
725 S. Figueroa St., 26th Floor
Los Angeles, CA 900l7

Dated: _7-23-07_

_____
Clerk